HEARD APRIL TERM, 1873.

## McCants vs. Wells.

Where commission merchants are employed in Charleston to ship cotton to Liverpool and sell it there for the owner, and they use reasonable skill and ordinary diligence in the selection of a vessel and in placing the cotton on board, they are not responsible to the owner for the negligence and delay of the master whereby loss occurs.

Where the agency is such that a sub-agent must be employed, who, from the very nature of the business, is not subject to the control of his immediate employer, the agent, if he discharges his own duty faithfully and well, is not responsible to the principal for the acts or omissions of the sub-agent.

A bill of lading is a negotiable instrument, and, when endorsed and delivered, transfers the property in the goods to the assignee.

Before GRAHAM, J., at Charleston, December Term, 1872.

This was an action by Lockwood A. McCants, plaintiff, against Edward L. Wells, defendant.

The complaint alleged:

1. That on or about the        day of November, in the year of our Lord eighteen hundred and sixty-eight, at Charleston, in the County and State aforesaid, the said plaintiff placed certain goods and merchandise, to wit: Nine bags of sea island cotton, marked " L. A.," and weighing in the aggregate three thousand one hundred and ten pounds, in the hands of his agents and factors, Gaillard & Minott, for sale.

2. That the said Gaillard & Minott, with the knowledge and assent of the said plaintiff, engaged Daniel Lesesne and Edward L. Wells, then copartners, doing business together as commission merchants under the style of Lesesne & Wells, to ship to and sell the said cotton in Liverpool, England, and on the 14th day of November, aforesaid, delivered the same to the said Lesesne & Wells, at Charleston, aforesaid ; and the said Lesesne & Wells, in consideration of a reasonable compensation, to be paid them by the said plaintiff, or his agents, Gaillard & Minott, agreed and undertook to ship and cause the said cotton to be carried to the city of Liverpool, England, within a reasonable time, and there to be put upon the market for sale, and to sell the same for or on account of the plaintiff.

3. That subsequently, to wit, on the third day of December, the said plaintiff placed another bag of the same quality of cotton, marked in the same way, and weighing three hundred and nine pounds, in the hands of the said Gaillard & Minott, who, with the like knowledge and assent of the said plaintiff, engaged the said

Lesesne & Wells to ship to and sell the said bag of cotton in the city of Liverpool, England, and delivered the same to the said Lesesne & Wells, which the said Lesesne & Wells, in consideration of a reasonable compensation, likewise agreed to ship and cause to be carried to the said city of Liverpool, within a reasonable time, and there to be put upon the market for sale, and to sell the same for or on account of the plaintiff.

4. That the said Lesesne & Wells did not fulfil their agreement to ship or cause the said ten bags of cotton to be carried to the said city of Liverpool, England, and there to put the same upon the market within a reasonable time, but, on the contrary, although thirty days were a reasonable time for carrying the same from the said city of Charleston to the said city of Liverpool, yet the said Lesesne & Wells so negligently and carelessly conducted themselves, and so misbehaved in regard to the same, that the said cotton did not reach the said city of Liverpool, and was not put on the market until long after that period, but at what precise time the cotton arrived in Liverpool the plaintiff has never been advised, and does not know; but the said cotton was not sold until the eighteenth day of September following, (1869.)

5. That the plaintiff applied to the said Lesesne & Wells for full information concerning the shipping of the said cotton by them, but no satisfactory information has been given to him respecting the same, and, in fact, the last written request for such information has never been acknowledged, noticed or answered.

6. That the market value of the said cotton in the city of Liverpool, during the month of January, eighteen hundred and sixty-nine, (during which month the said cotton should have reached the said city of Liverpool, and then and there have been put upon the market,) was worth sixty pence, (60d.,) equal, with exchange, to one dollar and forty cents ($1.40) per pound; but on the said eighteenth day of September was worth only and was sold for but thirty-nine pence, (39d.), equal, with exchange, to ninety cents (90c.) per pound, and that, by reason of the premises, the plaintiff was injured to his damage eighteen hundred dollars.

7. That the said Daniel Lesesne departed this life on or about the        day of February, in the year of our Lord eighteen hundred and seventy-one, leaving the said Edward L. Wells surviving partner of the said firm of Lesesne & Wells.

Wherefore the plaintiff demands judgment against the said

Edward L. Wells, surviving partner as aforesaid, in the sum of eighteen hundred dollars.·

The answer stated the facts, and denied the charges of negligence, carelessness, misbehavior and breach of contract on the part of Lesesne & Wells, but, on the contrary, insisted that they had discharged the duty they undertook to perform.

The case is fully stated in the opinion of the Court.

*Barker*, for appellant.

*McCrady*, contra.

Aug. 20, 1873. The opinion of the Court was delivered by

Moses, C. J. The action is brought by McCants against Wells, the survivor of Lesesne & Wells, who, in the lifetime of Lesesne, were engaged in the business of commission merchants in the city of Charleston. Damages are sought to be recovered for their alleged negligence in the shipment and sale of ten bags of sea island cotton, delivered to them, with the knowledge and assent of McCants, by Gaillard & Minott, his factors, to be forwarded to Liverpool and there sold. No fraud or collusive co-operation is charged through which the loss complained of in the price of the cotton occurred. He must, therefore, make out his case according to his averment in the complaint, or fail in his action.

According to the proof made by the respondent, and on which the non-suit was asked, Gaillard & Minott, as his factors or agents, in November, 1868, employed the firm'of the appellants to ship nine bales of sea island cotton to Liverpool, to be there sold. On 3d of December, another bag was delivered to them for the same disposition. It was made known to the shippers that the respondent and his factors preferred that it should be transported by a sailing vessel to a steamer, because "they did not care for it to reach Liverpool in November, as they considered the market would improve in January." The cotton, with the knowledge both of McCants and Gaillard & Minott, was delivered to the Borneo, advertised as an "A I B. R. ship," up for Liverpool, "having a portion of her cargo engaged and on board, to meet with despatch," and the cotton was consigned to. the correspondents of L. & W. An advance was made on it to McC., through G. & M., of eighty cents per pound, amounting to $2,771.20, for which bills on the correspondents of L.

& W. in Liverpool, at sixty days, were drawn, and the bills of lading forwarded. The Borneo did not sail until March 31, 1869, arriving at her destined port the ensuing 22d of April. The cotton was sold on the 18th of September following at ninety cents per pound, while in the preceding January it was worth one dollar and forty cents per pound, and the proceeds paid over to the factors. While she remained in port, dissatisfaction at her delay in sailing was made by McCants, both to his factors and L. & W., and, although they all united in the expression of great regret at her still being at her berth, no instruction was given to L. & W. to demand a return of the cotton. McCants did ask "if it was possible to get the cotton off the boat," to which Lesesne replied, "that was not practicable, because it had been drawn on."

The testimony of the plaintiff had been thus disclosed by the only witness examined on his behalf when he rested his case. No evidence had been offered to show the usage of trade in regard to the shipment of cotton by a commission merchant on account of others, so far as it affected the question of reasonable time. Mr. Minott, the witness, said : " when a ship is advertised to sail in that way, his calculation is that she ought to reach Liverpool in sixty days— that it is generally supposed that is long enough to get the cotton on the market." The appellant then moved for a non-suit on the grounds :

First. " That the plaintiff's own witness, who made the contract with L. & W., testifies that he did not make that contract with them, as alleged in the complaint, and did not agree and undertake to ship and cause the said cotton to be carried to Liverpool within a reasonable time, for a compensation paid to them by G. & M., as stated in the second section of the complaint, and that upon the basis of that statement of the agreement the allegation of the fourth section falls to the ground. The plaintiff has failed to prove the undertaking, which is the basis of the whole case, and the charge of negligence cannot be sustained."

Second. " That there was no proof of any implied contract on the part of L. & W., arising out of any custom of trade presented by the plaintiff in this case, to ship and cause the said cotton to be carried to the city of Liverpool, England, within a reasonable time."

The fourth section of the complaint, referred to in the said first ground, charges the negligence and carelessness of L. & W.,

in not causing the cotton to be carried to the place of its destination in a reasonable time, as the breach of the contract, for which a reparation in damages is sought.

The motion for a non-suit was refused, and on appeal is renewed here.

Where the time for the performance of a contract is not specified the law requires it to be done in a reasonable time.—Chit. on Con., 730 ; *Ellis* vs. *Thompson*, 3 M. & W., 452.

The rule is not confined to cases of common carriers, but is held to apply to all agreements where the parties in their stipulation omit to fix a day when the obligation is to cease, by reason of the execution of the duty which it imposes. If the undertaking looks to its completion by the party alone who assumes it, then he is bound to its fulfillment in a reasonable time, and the period must be measured by the implications which arise from the nature of the contract, and that which is adopted and applied in transactions of the like character. Where it is essential to its consummation that other agencies are to be employed, which are independent of his authority, and this necessity is incident to the very character of the transaction, then if the party sought to be made liable can show that so much of the contract as depended on his individual action was performed in a reasonable time, he cannot be held responsible, because the execution of the undertaking was not so complete, by reason of the failure of those whose intervention was not only material but indispensable to its accomplishment.

It is proper, therefore, to examine the character of the contract which L. & W. entered into with G. & M., on behalf of the respondent, so that we may ascertain the duties which devolved upon them, and the obligation which they imposed. The motion is for a non-suit, and, in its consideration, we are to be governed alone by the evidence introduced by the respondent before it was made in the Court below, and, therefore, all questions arising on the exceptions to the charge of the presiding Judge are necessarily excluded.

What was the engagement into which L. & W. entered with McCants? It was to ship the cotton by a sailing vessel, and sell or cause to be sold in Liverpool. It bound them, for its proper discharge, to exercise " reasonable skill and ordinary diligence, and they are consequently liable for injuries to their employer occasioned by the want of reasonable skill, and also for ordinary negli-

gence."—Story on Ag., § 172; Story on Bailm., § 295; Jones on Bailm., 10.

But this requisition could only attach on so much of the execution of the contract as depended exclusively upon them. They were bound by it to the engagement of a sound ship for the conveyance of the cotton and the employment of judicious and reliable agents for its sale in Liverpool. It is not charged that they failed in either of these duties. With the knowledge both of the respondent and his factors, they shipped the cotton by the "Borneo," advertised by merchants of good repute as an "A I B. R. ship, having a portion of her cargo engaged and on board, to meet with dispatch." The right to a recovery is founded alone on the negligence of the appellant. The complaint does not allege liability from a knowledge, on the part of L. & W., either that the vessel would not sail with dispatch, accepting that term in the language of the witness of the respondent, to be found on the 6th and 9th pages of the brief, or that any action on their part contributed to the delay, or that they had done anything in regard to her detention which deprived McCants of any right of action against the ship owner for the loss which her stay at her berth in Charleston may have occasioned him. So far as their duty was involved in the selection of a vessel, it was completed when they engaged one that was seaworthy, and was to sail "with dispatch," and which, in the understanding of the witness, Minott, from the advertisement, would sail so as to reach Liverpool at the very time desired by McCants and his factors. L. & W. were commission merchants, dealt with in that character by G. & M., not as ship-owners or consignees of the Borneo. The nature of the transaction required the employment of a sub-agent for the completion of the duty they assumed. This was known to McC. as well as to G. & M., as was also the fact of the selection of the Borneo for the shipment. "The agent will not ordinarily be responsible for the negligence or misconduct of the sub-agent, if he has used reasonable diligence in his choice as to the skill and ability of the sub-agent; but the sub-agent will, in such cases, be responsible to the principal for his own negligence or misconduct."—Story on Ag., § 201 ; Paley on Ag., 17.

The respondent, before he can be allowed to go to the jury, must sustain the allegations in his complaint by some evidence. His right of action, he avers, arises from the negligence of the firm of the appellant in the performance of their undertaking. The ques-

tion of negligence is usually one of fact for the jury, but it is for the Court to determine whether, in the particular case, any evidence has been offered from which the jury would be at liberty to infer it. The testimony, so far as presented, came from the respondent, and made no case of negligence against L. & W. in the discharge of so much of the contract as was well understood between the parties to it could be performed by them through their independent action.

If McCants has a right of action against them for not furnishing him "with proof of a binding contract between them and the sub-agent, made in due form, according to the usage of trade, which could be enforced by the plaintiff in his own name, or in the name of the defendant, against such sub-agent for his default," it cannot be enforced through the complaint they now submit. It would not be an incident so arising from, or appertaining to, the transaction, that negligence could be inferred from it, but a collateral circumstance, not entering into the present issue.

Nor can it be inferred from the fact that L. & W. made no demand for the return of the cotton to the shippers, when the delay in the sailing of the "Borneo" made it manifest that it could not reach its proposed destination in the month of January. A demand would have been fruitless. The title to it had passed to the consignees in Liverpool, on whom the bills had been drawn for the benefit of McCants, and who, by the assignment of the bills of lading, thus became the legal owners of it, alone entitled to its possession. A bill of lading is a negotiable instrument, and when endorsed and delivered, transfers the goods to the endorsee.—Smith on Mercantile Law, 177 ; Chit. on Con., 435.

In *Akerman* vs. *Humphrey*, 1 C. and P., 53, Mr. Justice Burroughs said : "A bill of lading is exactly like a bill of exchange, and the property it refers to passes by endorsement of it." In a recent case, *The Thames*, 14 Wallace, 106, Mr. Justice Strong, delivering the opinion of the Court, says : "By issuing bills of lading for the cotton, stipulating for a delivery to order, the ship became bound to deliver it to no one who had not the order of the shipper." See, also, *The Vaughan, Ibid*, 266. A principle so generally recognized needs no reference to further authority for its sanction. L. & W. had, therefore, no more control over the cotton than did McCants himself.

The rules which govern common carriers cannot apply, without

modification, to the case in hand, and the argument for the respondent, therefore, fails, when it proceeds upon the assumption that the appellant was a common carrier, by invoking against him the principles by which that class of bailees are regulated. The ship owner here was the carrier, and the reference made by counsel to *Flanders* and *Jacobsen* have no force when applied to the appellant, but bear directly on the liability of the ship. He cannot be charged for the default of those to whom he entrusts the goods for carriage, unless, in his selection, he has failed to exercise reasonable diligence as to their skill and ability. If the cotton had been lost through the incompetency of the master, while the ship owner would have been liable, the appellant could not have been held to reparation by the respondent, unless a knowledge of such incapacity could be brought home to his firm.

We do not see in the evidence offered, on which the non-suit was asked, any ground on which the complaint can be sustained, and the motion made for it is granted.

*Wright*, A. J., and *Willard*, A. J., concurred.